Ralph C. Loeb, Esq. (#124773)
**KRANE & SMITH, APC**
16255 Ventura Boulevard, Suite 600
Encino, California 91436-2302

Telephone: (818) 382-4000
Facsimile: (818) 382-4001

Attorneys for Plaintiffs DARYL HALL, GOOD COP
BAD COP PRODUCTIONS, LLC and ROY DELARUE TOURS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYL HALL, an individual, GOOD COP BAD COP PRODUCTIONS, LLC, a New York limited liability company and ROY DELARUE TOURS, INC., a New York corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RURAL MEDIA GROUP, INC., a Delaware corporation, RFD-TV, LLC, a Delaware limited liability company and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. COPYRIGHT INFRINGEMENTS RE: MUSICAL COMPOSITIONS;<br>2. COPYRIGHT INFRINGEMENT RE: AUDIO VISUAL WORKS AND SOUND RECORDING;<br>3. VIOLATION OF RIGHT OF PUBLICITY;<br>4. BREACH OF ORAL CONTRACT;<br>5. FRAUD;<br>6. NEGLIGENT MIS-REPRESENTATION;<br>7. QUANTUM MERUIT; AND<br>8. BREACH OF WRITTEN CONTRACT.<br><br>**DEMAND FOR JURY TRIAL** |

S:\HALL-DARYL\COMPLAINT-DISTRICT.001.wpd         1

Plaintiffs DARYL HALL, GOOD COP BAD COP PRODUCTIONS, LLC and ROY DELARUE TOURS, INC. for their Complaint allege as follows:

## THE PARTIES

1. Plaintiff DARYL HALL ("Hall") is an individual domiciled in the State of Connecticut who does business in Los Angeles County, in the State of California.

2. Plaintiff GOOD COP BAD COP PRODUCTIONS, LLC ("GOOD COP BAD COP") is, and at all relevant times hereto was, a New York limited liability company organized in existing under and by virtue of the laws of New York with its place of business in Los Angeles County, in the State of California.

3. Plaintiff ROY DELARUE TOURS, INC. ("RDT") is, and at all relevant times hereto was, a New York corporation duly organized and existing under and by virtue of the laws of New York, with its principal place of business in Los Angeles County, in the State of California.

4. Plaintiffs are informed and believe and thereon allege that Defendant RURAL MEDIA GROUP, INC. ("Rural Media Group") is, and at all times relevant hereto was, a corporation existing under and by virtue of the laws of the State of Delaware with its principal place of business in Omaha, Nebraska. Furthermore, Rural Media does business within Los Angeles County, in the State of California and is subject to the jurisdiction of this court.

5. Plaintiffs are informed and believe and thereon allege that Defendant RFD-TV, LLC ("RFD-TV") is, and at all times relevant hereto was, a limited liability company existing under and by virtue of the laws of the State of Delaware with its principal place of business in Omaha, Nebraska. Furthermore, upon information and belief, RFD-TV does business within Los Angeles County, in the State of California and is subject to the jurisdiction of this court.

6. The true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and based thereon allege that each of the fictitiously named defendants is responsible in some manner for the events, acts, occurrences and liabilities alleged and referred to herein. Plaintiffs will amend this Complaint to allege the true names and capacities of these DOE Defendants when the same are ascertained.

## JURISDICTION AND VENUE

7. This action involves claims of copyright infringement under the provisions of the Copyright Act of the United States, as amended, 17 U.S.C. §1 et seq., and claims for violation of the right of publicity, breach of contract, fraud, negligent misrepresentation and quantum meruit.

8. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §1331 and 1338(a). This Court also has subject matter jurisdiction based on 28 U.S.C. §1332 because complete diversity exists as to the parties and Plaintiffs' claims against each of the Defendants exceeds $75,000, exclusive of interests and costs.

9. This Court also has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367 because these claims are so related to Plaintiffs' claims under the federal law that they form part of the same case or controversy, and arise from a common nucleus of operative facts.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) because a substantial part of the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

A. **Daryl Hall**

11. Daryl Hall started his career as a teenager on the streets of Philadelphia, he quickly formed creative affiliations with such artists as Smokey Robinson, the Temptations

and many other top soul singers of the '60s. He began his recording career with Kenny Gamble and Leon Huff, working as both an artist and session musician.

12. In 1972, Hall formed a partnership with his friend John Oates ("Oates") and embarked on a 40-odd year creative journey.

13. From the mid-'70s to the mid-'80s, Hall and Oates would score six #1 singles, including "Rich Girl", "Kiss on My List," "Private Eyes," "I Can't Go for That (No Can Do)", "Maneater" and "Out of Touch" from their six consecutive multi-platinum albums - '76's *Bigger Than Both of Us*, '80s *Voices*, '81's *Private Eyes*, '82's *H2O*, '83's *Rock N Soul, Part 1* and '84's *Big Bam Boom*. The era would also produce an additional 5 Top 10 singles, "Sara Smile," "One on One," "You Make My Dreams Come True," "Say It Isn't So" and "Method of Modern Love." Hall also wrote the Hall and Oates single "Everytime You Go Away", which singer Paul Young scored a number-one hit with as a cover of the song in 1985.

14. In 1985, Hall and Oates participated in the historic "We Are the World" session as well as closing the Live Aid show in Philadelphia. By 1987, the Recording Industry Association of America recognized Hall and Oates as the number-one selling duo in music history, a record they still hold today.

15. In 2014, Hall and Oates were inducted into the Rock and Roll Hall of Fame.

16. In addition to his work with Oates, Hall has made music as a solo artist. In 1986, Hall made an album with Dave Stewart, *Three Hearts in the Happy Ending Machine*, which spawned two top ten hits. Hall has recorded such solo works as *Soul Alone* in 1993, *Can't Stop Dreaming* in 2003, and *Laughing Down Crying* in 2011, all of which were well received with international critical acclaim.

17. In November of 2007, Hall created a monthly web series, *Live From Daryl's House* (http://www.livefromdarylshouse.com) and has since expanded to Viacom's VH1, VH1 Classic, and Palladia networks. Hall started the monthly web show after having the

Case 2:15-cv-00074-FMO-AGR   Document 1   Filed 01/06/15   Page 5 of 16   Page ID #:5

idea of "playing with my friends and putting it up on the Internet," and the show has since garnered acclaim from, among others, Rolling Stone, SPIN, Daily Variety, CNN, BBC, Yahoo! Music, who have cited *Live From Daryl's House* as a perfect example of a veteran artist reinventing himself in the digital age by collaborating with both established colleagues and newer performers.

### B. The Defendants

18. Rural Media Group refers to itself as the world's leading provider of multimedia content dedicated to the rural, agribusiness and western lifestyle. Upon information and belief, Rural Media Group is the parent company of RFD-TV, FamilyNet, Rural TV, Rural Radio, RFD-TV The Magazine and RFD-TV The Theatre.

19. As set forth more specifically herein, in or about December 2012, an agreement was reached whereby *Live From Daryl's House* was broadcast on Rural Media Group's channels RFD-TV and Family Net. However, the agreement was terminated in 2014 because of Defendants' failure to pay and/or account for license fees.

### C. Daryl Hall's Appearance At The 2014 Rose Parade At Defendants' Request And Defendants' Unauthorized DVD

20. Since 2009, Rural Media Group has had corporate floats in the Tournament of Roses Parade in Pasadena California to promote and advertise its various businesses.

21. Rural Media Group requested Hall to appear on its Rose Parade float in 2013, but he declined. Nevertheless, Rural Media Group invited Hall's manager to the Rose Parade as one of its guests, and Hall's manager attended. In fact, Rural Media Group also invited and paid for its entire staff to travel to Pasadena, California for the 2013 Tournament of Roses Parade and Rural Media Group's float won the "Tournament Special" award.

22. As more specifically alleged herein, in or about October 2013, Rural Media Group specifically requested that Hall, his family and his band appear at the 2014 Rose Parade on Rural Media Group's float. Rural Media Group advised Hall that the title of the

COMPLAINT AND DEMAND FOR JURY TRIAL

2014 Rose Parade Rural Media Group float would be "You Make My Dreams Come True", the name of one of Hall's songs. In return for their appearance on its 2014 Rose Parade float, Rural Media Group agreed to reimburse RDT for all expenses incurred by Hall, his band and his family in connection with the appearance.

23. Based on Rural Media Group's promises, Hall, his band and his family did in fact appear on Rural Media Group's 2014 Rose Parade float (hereafter "Rose Parade Appearance") and RDT incurred $87,508.02 in expenses in connection therewith. On January 17, 2014, RDT submitted an invoice for that amount to Rural Media Group. Subsequently, at Rural Media Group's request, RDT provided back up documentation for the $87,508.02 in expenses.

24. However, notwithstanding Rural Media Group's admission that it agreed to reimburse the expenses incurred in connection with the Rose Parade Appearance and its failure to contest any of the specific expenses that were submitted for reimbursement, to date Rural Media Group has failed and refused to reimburse any of the expenses whatsoever.

25. Despite not having paid a penny of the expenses incurred in connection with the Rose Parade Appearance, Plaintiffs discovered in or about April 2014 that Rural Media Group was commercially selling a two disc 2014 Rose Parade DVD for $29.99 ("Rose Parade DVD"). As set forth more specifically herein, the Rose Parade DVD being sold by Rural Media Group included all of the following without the necessary authorization or consent: (a) Hall's likeness on the front and back covers and in the content of the Rose Parade DVD, (b) the songs "You Make My Dreams Come True" and "Bring It On Home" and the sound recording of "Bring It On Home", (c) excerpts from Hall's television show *Live From Daryl's House* and (d) photos, album covers, and filmed and/or videotaped excerpts of Hall and Oates (collectively "DVD Infringements").

## FIRST CAUSE OF ACTION

(For Copyright Infringement Re: Musical Compositions Under 17 U.S.C. §§101 et seq. By Hall Against Defendants Rural Media Group, RFD-TV And DOES 1-10)

26. Plaintiffs repeat, replead and reallege paragraphs 1 through 25 inclusive, of this Complaint and incorporate the same herein by the reference as though set forth in full.

27. In or about 1980, Hall, Oates and Sarah Allen wrote the lyrics, and Hall wrote the music, of the song entitled "You Make My Dreams Come True".

28. The song "You Make My Dreams Come True" is wholly original with Hall, Oates and Allen and is copyrightable subject matter under the laws of the United States. The United States Copyright Office issued Certificate of Registration for the "You Make My Dreams Come True", No. PA0000077329.

29. In or about 2011, Hall wrote the music and lyrics of the entitled "Bring It Back Home".

30. The song "Bring It Back Home" is wholly original with Hall and is copyrightable subject matter under the laws of the United States. Hall has applied for registration of the song "Bring It Back Home" with the United States Copyright Office.

31. In or about April, 2014, Hall learned that Defendants were using the songs "You Make My Dreams Come True" and "Bring It Back Home" on the Rose Parade DVD without the required consents or permissions.

32. By their actions alleged above, Defendants have willfully infringed and will continue to willfully infringe Hall's copyrights in and relating to the Song.

33. Hall is entitled to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

34. Hall is further entitled to recover from Defendants statutory and/or compensatory damages, including attorneys' fees, he has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged above. At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Hall.

## SECOND CAUSE OF ACTION

**(For Copyright Infringement Re: Audio Visual Works And Sound Recording Under 17 U.S.C. §101 et seq. By Good Cop Bad Cop Against Defendants Rural Media Group, RFD-TV And DOES 1-10)**

35. Plaintiffs repeat, replead and reallege paragraphs 1 through 34 inclusive, of this Complaint and incorporate the same herein by the reference as though set forth in full.

36. Plaintiff Good Cop Bad Cop owns the United States copyright to each and every episode of the web series *Live From Daryl's House*, which constitute copyrightable subject matter under the laws of the United States.

37. In or about April, 2014, Good Cop Bad Cop learned that Defendants were using clips from episodes of *Live From Daryl's House* on the Rose Parade DVD without its consent or permission including, but not limited to, the following: Episodes 16, 22, 24, 33, 34, 35, 42 and 61 (hereafter collectively referred to as the "Infringed Episodes of Daryl's House"). Good Cop Bad Cop has applied for registration of the Infringed Episodes of Daryl's House with the United States Copyright Office.

38. Good Cop Bad Cop also owns the United States copyright to the sound recording of the song "Bring It On Home", the theme song for *Live From Daryl's House*. Good Cop Bad Cop has applied for registration of the sound recording of the song "Bring It On Home" with the United States Copyright Office.

39. By their actions alleged above, Defendants have willfully infringed and will continue to willfully infringe Good Cop Bad Cop's copyrights in and relating to the Infringed Episodes of Daryl's House and the sound recording to "Bring It On Home".

40. Good Cop Bad Cop is entitled to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

41. Good Cop Bad Cop is further entitled to recover from Defendants compensatory damages it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged above.

## THIRD CAUSE OF ACTION

**(Violation of Right of Publicity by Hall Against Defendants Rural Media Group, RFD-TV And DOES 1-10)**

42. Plaintiffs repeat, replead and reallege paragraphs 1 through 41 inclusive, of this Complaint and incorporate the same herein by the reference as though set forth in full.

43. The actions of Defendants as alleged herein constitute unlawful commercial misappropriation of the Hall's name and likeness, in that such acts were and are being done without Hall's consent or authorization and for the purpose of Defendants' pecuniary advantage.

44. As a proximate cause of Defendants' actions, Hall has been damaged in an amount to be shown according to proof at trial, but in no event less than $87,508.02.

## FOURTH CAUSE OF ACTION

**(For Breach of Oral Contract By RDT Against Defendants Rural Media Group, RFD-TV And DOES 1-10)**

45. Plaintiffs repeat, replead and reallege paragraphs 1 through 44, inclusive of this Complaint and incorporate the same herein by reference as though set forth in full.

46. In or about October 2013, RDT on the one hand, and the Rural Media Group on the other hand, at the Beverly Hills Hotel in California, entered into an oral agreement with the following terms ("Rose Parade Agreement"): (1) RDT agreed to cause Hall, his family and his band to appear at the 2014 Rose Parade on Rural Media Group's float and (2) in return for their appearance on its 2014 Rose Parade float, Rural Media Group agreed to reimburse RDT for all expenses incurred in connection with the appearance by Hall, his band and his family.

47. RDT has performed all conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the Rose Parade Agreement.

48. Rural Media Group has breached the Rose Parade Agreement in that it refuses to reimburse RDT for any of the expenses incurred in connection with the appearance by Hall, his band and his family at the 2014 Rose Parade on Rural Media Group's float.

49. As a direct and proximate result of Defendants conduct, RDT has sustained and will sustain compensatory damages in an amount according to proof, but which Plaintiffs are informed and believe, and based thereon allege, will in no event be less than $87,508.02, plus interest thereon at the maximum legal rate.

## FIFTH CAUSE OF ACTION

**(For Fraud By RDT Against Defendants Rural Media Group, RFD-TV And DOES 1-10)**

50. Plaintiffs repeat, replead and reallege paragraphs 1 through 49 inclusive, of this Complaint and incorporate the same herein by the reference as though set forth in full.

51. Beginning on or about October 2013, Defendants through their representative, Patrick Gottsch, the Founder of Defendants, falsely and fraudulently represented to Plaintiffs' manager, Jonathan Wolfson, that Defendants would reimburse the expenses incurred in connection with the Rose Parade Appearance.

52. Upon information and belief, Defendants knew that the representations they made were false at the times they made them.

53. At the time the alleged misrepresentations were made by Defendants, Plaintiffs were ignorant of the falsity of Defendants' misrepresentations and believed them to be true. Plaintiffs reasonably relied on Defendants' misrepresentations to their detriment, by among other things, entering into the Rose Parade Agreement and incurring $87,508.02 in expenses in connection with the Rose Parade Appearance.

54. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs have suffered, and will continue to suffer, damages in excess of this Court's jurisdictional minimum.

55. Defendants conduct, as alleged herein above, was committed with malice, oppression, and fraud. This conduct is despicable, has subjected Plaintiffs to the wrongful loss of substantial sums of money, and was carried out in a wilful and conscious disregard for the interests of Plaintiffs, thereby entitling Plaintiffs to an award of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION

**(For Negligent Misrepresentation By RDT Against Defendants Rural Media Group, RFD-TV And DOES 1-10)**

56. Plaintiffs repeat, replead and reallege paragraphs 1 through 55 inclusive, of this Complaint and incorporate the same herein by the reference as though set forth in full.

57. In the alternative, Defendants made the representations alleged in paragraph 51 negligently and without any reasonable basis for believing them to be true and for the purpose of inducing Plaintiffs to enter into the Rose Parade Agreement and incur expenses in connection with the Rose Parade Appearance.

11

COMPLAINT AND DEMAND FOR JURY TRIAL

58. Plaintiffs were ignorant of the falsity of said representations and justifiably relied upon such representations of Defendants to their detriment by entering into the Rose Parade Agreement and incurring $87,508.02 in connection with the Rose Parade Appearance.

59. As a proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged, in an amount to be shown according to proof, but in no event less than $87,508.02.

### SEVENTH CAUSE OF ACTION
**(For Quantum Meruit By RDT Against Defendants Rural Media Group, RFD-TV And DOES 1-10)**

60. Plaintiffs repeat, replead and reallege paragraphs 1 through 59 inclusive, of this Complaint and incorporate the same herein by the reference as though set forth in full.

61. At the instance and request of Defendants, RFD caused Hall, his band and his family to render services in connection with the 2014 Rose Parade for the benefit of Defendants.

62. Notwithstanding the rendition of the requested services by Hall, his band and his family, Defendants have not paid anything for those services or reimbursed any of the expenses incurred in connection with the rendition of those services.

63. Accordingly, RDT is entitled to the reasonable value of the services rendered and reimbursement of the expenses incurred in connection with the Rose Parade Appearance in an amount to be shown according to proof, but in no event less that $87,508.02.

### EIGHTH CAUSE OF ACTION
**(For Breach of Contract Written Contract By Good Cop Bad Cop Against Defendants RFD-TV And DOES 1 - 10)**

64. Plaintiffs repeat, replead and reallege paragraphs 1 through 63, inclusive of this Complaint and incorporate the same herein by reference as though set forth in full.

65. On or about December 31, 2012, Good Cop Bad Cop and RFD-TV entered

into a written agreement pursuant to which Good Cop Bad Cop licensed to RFD-TV certain rights to broadcast the series *Live From Daryl's House*" subject to the terms and conditions set forth in the written agreement ("License Agreement"). Plaintiffs have not attached a copy of the License Agreement to this Complaint because of the confidentiality provisions contained in the License Agreement.

66. Good Cop Bad Cop has performed all of the conditions and covenants that it agreed to perform pursuant to the terms of the License Agreement, except for those promises, conditions and covenants excused by the acts and omissions of Defendants.

67. RFD-TV breached the License Agreement by failing and refusing to account for and pay fees to Good Cop Bad Cop pursuant to the License Agreement.

68. As a direct and proximate result of RFD-TV's breaches, Good Cop Bad Cop has suffered, and will continue to suffer, damages in excess of this Court's jurisdictional minimum. Good Cop Bad Cop cannot ascertain at this time the full nature, extent or amount of damages suffered by virtue RFD-TV's breaches other than the fact that the sum exceeds this Court's jurisdictional minimum. Plaintiffs will amend this Complaint to set forth the amount of the full damages when they are ascertained or according to proof at trial.

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. **ON THE FIRST CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For statutory damages;
   d. For injunctive relief;
   e. For attorneys' fees;
   f. For costs of suit herein; and
   g. For such other and further relief as the Court deems just and proper.

2. **ON THE SECOND CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For injunctive relief;
   d. For costs of suit herein; and
   e. For such other and further relief as the Court deems just and proper.

3. **ON THE THIRD CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For attorney's fees;
   d. For injunctive relief;
   e. For punitive and exemplary damages according to proof;
   f. For costs of suit herein; and
   g. For such other and further relief as the Court deems just and proper.

4. **ON THE FOURTH CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For costs of suit herein; and
   d. For such other and further relief as the Court deems just and proper.

5. **ON THE FIFTH CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For punitive and exemplary damages according to proof;
   d. For costs of suit herein; and
   e. For such other and further relief as the Court deems just and proper.

6. **ON THE SIXTH CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For costs of suit herein incurred; and
   d. For such other and further relief as the Court deems just and proper.

6. **ON THE SEVENTH CAUSE OF ACTION**
   a. For the reasonable value of services and reimbursement of expenses according to proof;
   b. For interest thereon according to law;
   c. For costs of suit herein incurred; and
   d. For such other and further relief as the Court deems just and proper.

6. **ON THE EIGHTH CAUSE OF ACTION**
   a. For damages according to proof;
   b. For interest thereon according to law;
   c. For an accounting;
   d. For costs of suit herein incurred; and
   e. For such other and further relief as the Court deems just and proper.

Dated: January 6, 2015            KRANE & SMITH, APC

By: /s/ Ralph C. Loeb
    RALPH C. LOEB
    Attorneys for Plaintiffs DARYL HALL, GOOD COP BAD COP PRODUCTIONS, LLC, and ROY DELARUE TOURS, INC.

## DEMAND FOR JURY TRIAL

Plaintiffs DARYL HALL, GOOD COP BAD COP PRODUCTIONS, LLC and ROY DELARUE TOURS, INC., hereby demands a jury trial in this action.

Dated: January 6, 2015          KRANE & SMITH, APC


By: *Ralph C. Loeb*
RALPH C. LOEB
Attorneys for Plaintiffs DARYL HALL, GOOD COP BAD COP PRODUCTIONS, LLC, and ROY DELARUE TOURS, INC.